SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**MIRA CHERNICK, MASB #696845**
Mira.Chernick@usdoj.gov
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**UNITED STATES OF AMERICA**

**v.**

**SELVA DELANO MUDALIAR,**

**Defendant.**

**3:24-cr-00340-MO**

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

Defendant moves to dismiss the indictment because of the delayed disclosure of a report and business records that were produced in discovery approximately seven months before trial. The records are not exculpatory, they were not suppressed, and defendant was not prejudiced. The motion should be denied.

## FACTUAL AND PROCEDURAL HISTORY

On December 3, 2021, defendant attempted to compel Adult Victim 1 (AV1) to engage in a commercial sex act with a stranger for defendant's financial benefit. When AV1 did not do so, defendant brutally beat and strangled her in his car and in his apartment in Tigard, Oregon. AV1 fled from defendant's apartment and called 911. Responding officers observed significant

injuries to AV1's face and neck. They also located defendant driving nearby and observed that he had injuries to his hand consistent with AV1's report that she bit him while he was strangling her. Defendant was arrested that night and subsequently indicted in Washington County for multiple violations of state law, including assault, strangulation, kidnapping, coercion, and unlawful use of a weapon.

During the pendency of his state case, there was a period of time when defendant represented himself *pro se*. On February 23, 2023, defendant filed a *pro se* motion to dismiss the state charges. In the motion, defendant provided his own version of the events of December 3, 2021. As corroboration, he provided location information for that night taken from his own cell phone. Defendant admitted to driving to a hotel in Vancouver on the night in question, supposedly to see "[AV1's] friend" there. Exhibit L to defendant's motion, which contained the location information taken from his own phone, showed defendant arriving at the Quality Inn & Suites in Vancouver, Washington at approximately 2:48 a.m. and departing at approximately 3:17 a.m.

Defendant's jury trial on the state charges was scheduled to begin on March 5, 2024. A pre-trial conference and possible change of plea was scheduled for February 23, 2024. Defendant failed to appear for that court date, instead fleeing to Thailand on a one-way ticket. Washington County Circuit Court issued a warrant for defendant's arrest, and the Federal Bureau of Investigation was contacted to assist with locating and extraditing defendant. While assisting with the extradition, federal investigators learned that defendant had sex trafficked AV1 the night of the assault charged by Washington County, and that her failure to earn him money by engaging in commercial sex was the motive for the assault. The federal government opened its own sex trafficking investigation, and on September 10, 2024, defendant was indicted on federal

charges of Sex Trafficking by Force, Fraud, or Coercion in violation of 18 U.S.C. §1591(a)(1), and Transporting an Individual to Engage in Prostitution in violation of 18 U.S.C. §2421(a).

On April 8, 2024, while investigating the sex trafficking charges, the case agent took AV1 to the Quality Inn in Vancouver, Washington. This is the same hotel identified by name in defendant's pro se motion filed more than a year earlier. AV1 confirmed that she believed the Quality Inn was the hotel where defendant had sex trafficked her on December 3, 2021. The case agent requested and obtained from hotel management a list of the registered guests who were staying at the hotel that night. The case agent was unable to identify any names on the list that warranted further investigation. In April 2026, in anticipation of a potential trial date, the case agent conducted a review of discovery and realized that the hotel records had not previously been disclosed. The agent wrote a report documenting how and when the records were obtained, and that report and the records were disclosed to the defense on April 9, 2026.[1]

This case is currently set for trial on November 2, 2026.

## LEGAL STANDARDS

### A. *Brady*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or

---

[1] Defendant claims these documents were disclosed on April 13, 2026. Mot. at 3. The government emailed defense counsel the documents on April 9, 2026, at 2:35 p.m., prior to producing them in formal discovery.

inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also United States v. Bruce*, 984 F.3d 884, 894–95 (9th Cir. 2021).

**Dismissal**

"[T]he drastic step of dismissing an indictment is a disfavored remedy." *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). A court may dismiss an indictment based on government misconduct under either the Due Process Clause or as an exercise of its supervisory powers. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). Dismissal on due process grounds is appropriate only where the government conduct is "so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (citations omitted). Government conduct that is *malum in se* or amounts to "the engineering and direction of the criminal enterprise from start to finish" is necessary to satisfy this "extremely high standard." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991); *accord Barrera-Moreno*, 951 F.2d at 1092; *see also Smith*, 924 F.2d at 897 (describing government activities that do not violate the due process standard).

A dismissal under the Court's supervisory powers is an "extreme remedy" that is seldom appropriate. *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993). Such a dismissal primarily functions to "remedy a constitutional or statutory violation"; "protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury"; and "deter future illegal conduct." *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) (citations omitted). Dismissal based on the government's failure to comply with its discovery obligations, including discovery orders issued by the court, lies within a Court's supervisory powers, *Jacobs*, 855 F.2d at 655, but is rare, even where the government admits having committed discovery infractions. *See, e.g.*, *United States v. Dominguez*, No. 14-10507, 641 Fed.

App'x 738, at 2–3 (9th Cir. 2016) (unpublished) (affirming the district court's decision not to dismiss despite numerous *Brady*, *Giglio*, *Jencks*, and Rule 16 violations leading to severe sanctions short of dismissal).

**ARGUMENT**

## I. There Has Been No *Brady* Violation

There are three components of a *Brady* claim, none of which is established here. The information was not exculpatory because its supposed value to defendant is based entirely on speculation. The evidence was not suppressed because defendant had the necessary information to discover the evidence himself. And defendant was not prejudiced because the evidence was disclosed nearly seven months before trial.

### A. The Hotel Records Are Not Favorable to the Defense

The government concedes that the hotel records were discoverable. That is why it produced them. But not all evidence that is discoverable is *Brady* material or implicates the defendant's due process rights.

"The proper test for pretrial disclosure of exculpatory evidence" is "whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *United States v. Price*, 566 F.3d 900, 913 n. 14 (9th Cir. 2009).[2] "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," does not establish a *Brady* violation.

[2] Because most *Brady* claims are filed after a conviction rather than seeking pretrial dismissal of an indictment, much of the case law in this area applies the more exacting "materiality" standard that is used to determine whether a due process violation occurred. Where the government cites such cases, it does so for the proposition that the information assessed in those cases was not material because it was not favorable to the defense.

*United States v. Agurs*, 427 U.S. 97, 109–110 (1976); *see also United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981) (quoting *Agurs*). A court may not rely on "speculation" as to what a different trial preparation strategy or further investigation could have uncovered to satisfy *Brady*'s favorableness prong. *See Wood v. Bartholomew*, 516 U.S. 1, 6 (1995).

In *Downs v. Hoyt*, 232 F.3d 1031 (9th Cir. 2000), the Ninth Circuit considered whether "files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up" are favorable to the defendant. *Id.* at 1037. The government had withheld information about some 100 leads contained in investigators' case file, which included pictures and names of alternate suspects, license plate numbers of vehicles matching a description given by the defendant in her own version of events, and names and phone numbers of citizens and law enforcement officials with potentially relevant information. *Id.* at 1036. The defendant argued that this information was favorable to the defense because "additional witnesses would have supported her version of the events and provided her with an opportunity to track down the [true culprit]." *Id.*

The district court denied Downs's *Brady* claim, finding that her argument "amount[ed] to speculation that the withheld material *might* have led to some admissible evidence which *might* have been sufficiently favorable" to establish a *Brady* violation. *Id.* at 1037 (emphasis in original). The Ninth Circuit agreed, concluding that "[t]he most that can be said of these materials is that they might have provided investigatory leads." *Id.*

The same is true here. The hotel records themselves are not exculpatory; they consist of a list of names of people who stayed at a specific hotel on a specific date. With the exception of a first name, which may have been a false name or nickname, the intended john was anonymous and a stranger to AV1 and to defendant. It is impossible to determine from these records who

the intended john might have been and whether the room he stayed in was registered in his name, a false name, or someone else's name. The records at issue here are far less useful to the defense than those in *Downs*, which included rumors pointing to an alternate suspect and specific contact information for people believed to have relevant information. Here, as in *Downs*, defendant's arguments about the exculpatory value of the hotel records are "speculative." *Id.*

Defendant cites no case in which similar evidence was held to be exculpatory, but makes two conclusory and speculative arguments that the hotel records are favorable to the defense. Mot. at 5. First, defendant argues that "[t]he fact that no one registered at the hotel on the night in question has corroborated AV1's claim . . . is exculpatory." *Id.* But this argument elides the fact that no one has corroborated AV1's report because *no one on the list has been interviewed*. The records were obtained three years after the charged conduct occurred, it was not possible to determine which of the names on the list merited further investigation, and there was no reason to believe that the intended john would truthfully answer questions from law enforcement about whether he bought cocaine and participated in sex trafficking three years earlier.[3] The fact that these leads were not pursued is not exculpatory.

Second, defendant argues that the records "identify potential percipient witnesses, including any potential alleged 'John,' who defense believes would contradict AV1's claim." Mot. at 5. Apart from defendant's self-serving assertion, there is no reason to believe that the intended john would offer exculpatory information rather than incriminating information. Nor is there any reason to believe that other men staying at the hotel that night would have information useful to the defense, since nothing that occurred at the hotel would have attracted the attention

[3] From open source inquiries, it appears that many of the men on the list are married, and one is a local public figure.

of other guests. Defendant's arguments are premised on exactly the sort of speculation that was rejected in *Downs*, except perhaps that the speculation here is even more baseless. *See also Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir. 1984) (list of "possible suspects" who were talked to by the police to see what information they might have was not exculpatory); *United States v. Jordan*, 399 F.2d 610, 615 (2d Cir. 1968) ("the myriad immaterial statements and names and addresses which any extended investigation is bound to produce" are not *Brady* material); *Beaman v. Souk*, 7 F. Supp. 3d 805, 822 (C.D. Ill. 2014), *aff'd sub nom. Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) (evidence of potential leads that were not pursued is not exculpatory because, "[i]n any investigation, there are likely to be leads that are not pursued. Investigators must make decisions about how to use their resources to investigate cases.").

The evidence at issue was not favorable to the defense, and defendant's *Brady* claim should be denied.

**B. The Hotel Records Were Not Suppressed**

Since suppression by the Government is a necessary element of a *Brady* claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails. *United States v. Dupuy*, 760 F.2d 1492, 1501 n. 5 (9th Cir. 1985). Defendant argues that the hotel records were suppressed because the government had them and did not promptly turn them over. When, as here, a defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (citing *United States v. Dupuy,* 760 F.2d at 1501 n. 5 and *United States v. Griggs,* 713 F.2d 672, 674 (11th Cir. 1983)).

On February 23, 2023—about a year before the government began investigating federal charges—defendant filed a *pro se* motion in his state case, in which he admitted driving to a

hotel in Vancouver with AV1 in the early morning hours of December 3, 2021. He also attached location information from his own phone identifying the hotel in question as the Quality Inn & Suites. This was consistent with information the government subsequently obtained from AV1 and promptly disclosed, in which she stated that the hotel defendant took her to that night was "like a Quality Inn or LaQuinta type of place." MUDALIAR_0000224. The case agent then identified the Quality Inn as the most likely location and obtained guest registration records for the relevant dates.

Defendant has issued five subpoenas under Rule 17(c) of the Federal Rules of Criminal Procedure, mostly seeking to embarrass or discredit AV1 through the mental health struggles she suffered after the defendant trafficked and beat her. *See* ECF No. 64. If defendant believed that the guest registration records from the Quality Inn would be favorable to his case, he could have obtained them in the same manner. The aspect of the records that defendant claims to be exculpatory—the fact that the government had not identified the intended john—was disclosed to the defense at the initial appearance and throughout the government's discovery.

The Ninth Circuit has held repeatedly that there is no suppression when the government does not disclose records that the defendant knows exists. *See United States v. Lowe*, 676 F. App'x 728, 730 (9th Cir. 2017); *Cunningham v. Wong,* 704 F.3d 1143, 1154 (9th Cir. 2013); *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006). In *Lowe*, the defendant claimed that the government violated *Brady* by withholding the results of the county hospital's physical examination of a government witness. *See* 676 F. App'x at 730–731. The court denied the claim for "failure to establish suppression," finding that the defendant "sufficiently knew about the existence of the county hospital report throughout both the pretrial proceedings and trial." *Id.* Similarly, in *Cunningham*, the court found that an autopsy report and medical records were not

suppressed under *Brady* because defendant's attorneys "were obviously aware" that one victim had died and that the other had been treated by medical personnel, and the could have easily sought the records through discovery. 704 F.3d at 1154. In *Raley*, the defendant claimed that the prosecution failed to disclose exculpatory and mitigating evidence contained in the jail's medical records from his pretrial confinement. 470 F.3d at 803–804. The court again found no *Brady* violation, noting that the defendant "possessed the salient facts regarding the existence of the records that he claims were withheld." *Id.* at 804. Because the defendant "knew of the existence of the evidence, his counsel could have sought the documents through discovery," and there was no suppression under *Brady*. *Id*.

The circumstances here are identical. Defendant knew that AV1 reported that he tried to traffic her to a stranger at a hotel in Vancouver, Washington on the night of December 3, 2021. He knew that he drove AV1 to the Quality Inn in Vancouver that night, and admitted as much in his *pro se* filing. He knew that hotels generally keep records of the guests who stay there. Here, as in *Cunningham,* "[t]here was no suppression of this easily attainable evidence." 704 F.3d at 1154. Defendant was well aware of the essential facts enabling him to subpoena the guest registration records from the Quality Inn, and the government did not violate *Brady* by not bringing them to his attention.

The government does not suggest that it may withhold any information that the defense could conceivably obtain through its own efforts. The prosecutor has a "broad duty of disclosure." *Strickler*, 527 U.S. at 281. The government embraces that duty, and disclosed the records to the defense months before trial. But *Brady* does not exempt the defense from conducting its own investigation. Unlike instances in which the government holds exclusive possession of non-public information, the government does not "suppress" information when the

defense could have obtained the same material from another source (the hotel). Defendant demonstrably knew exactly where to find the records in question, and the government did nothing to mislead the defense or conceal the records. Defendant's insistence that the government must face extreme sanctions for failing to immediately turn them over goes far beyond what even *Brady*'s broad duty requires. There was no suppression, and defendant's claim should be denied.

**C. Defendant Was Not Prejudiced**

There is no *Brady* violation unless prejudice ensues. *Strickler*, 27 U.S. at 281–82. If the defendant has "a substantial opportunity to use the belatedly disclosed evidence, there is no prejudice." *United States v. Alahmedalabdaloklah* ("*Oklah*"), 94 F.4th 782, 827–28 (9th Cir. 2024) (citing *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988)); *see also United States v. Shelton*, 588 F.2d 1242, 1247 (9th Cir. 1978) (holding that "there can be no claim of prejudice insofar as the defendant was enabled to present to the jury favorable or impeaching evidence.").

Defendant argues that he was prejudiced because "the government's delay has cost the defense both the ability to locate these witnesses and the reliability of what they may now say." Mot. at 7. First, the defense has described no actual efforts taken over the past six months to locate or interview any of the potential witnesses named in the hotel records, making this claim entirely speculative. Second, defendant blames the government for the effects of five years of delay, when the relevant information was only known to the government for the past two.

Defendant complains that "the individuals identified in the records are now far harder to locate" because they "have likely left the area." Mot. at 7. It is exceedingly likely that these *hotel guests* left the area well before the government obtained the hotel records three years after

their stay; people rarely reside at the same hotel for longer than three weeks, let alone three years. Defendant also complains that these guests' "memories of a single night from five years ago have faded" and cites the D.C. Circuit's observation that "memories fade in eight months." *Id.* (quoting *United States v. Pasha*, 797 F.3d 1122, 1127 (D.C. Cir. 2015)).[4] If memories fade in eight months, they certainly fade in three years. The usefulness of the hotel records to either party was minimal at the time the government acquired them, and defendant was not prejudiced by a two-year delay in obtaining records that were already three years old when they came into the government's possession.

Defendant's prejudice argument relies on *United States v. Cloud,* 102 F.4th 968 (9th Cir. 2024), a case that bears no resemblance to this one. In *Cloud*, the government possessed glaringly exculpatory impeachment evidence that a key government witness "was willing to shape her testimony in exchange for certain benefits." *Id.* at 971. The government did not voluntarily disclose the impeachment evidence, and it was instead obtained by defense counsel through independent means the night before the witness in question was set to testify. *Id.* at 972. The morning of the witness's testimony, defense counsel asked the prosecutors if there was anything they wanted to bring up, and the prosecutors said there was not. *Id.* The prosecutors had already been chastised by the court earlier in the case for delayed disclosures. *Id.* at 978, n.

---

[4] The *Brady* violation in *Pasha* concerned a government witness's statement, more than eight months before trial, that was incompatible with the government's charges. Despite recognizing that the statement was exculpatory, the prosecutor waited until a few weeks before trial to disclose the statement to defense counsel. Defense counsel abandoned his other trial preparation tasks to locate and interview the witness, who proceeded to give conflicting statements to defense counsel and the government about the key fact at issue. The witness's wavering recollection and defendant's inability to interview him when his memory was fresher demonstrated prejudice. *See* 797 F.3d 1122, 1127.

7. The panel's opinion expressed its skepticism that prosecutors ever intended to disclose the impeachment information, compared them to "a child whose hand is caught in the cookie jar," *id.* at 977, and concluded that they were "gaming the impact the disclosure might have," *id.* at 978.

There is no comparison between *Cloud* and this case. *Cloud* involved the suppression of highly valuable impeachment information regarding a key witness until the morning of that witness's testimony, and it is apparent that the court had serious concerns about the prosecutors' candor and whether they ever would have disclosed the evidence had they not been caught. Here, the government voluntarily disclosed, seven months before trial, a list of leads it did not consider to be worth pursuing. Defendant's reliance on *Cloud* is misplaced.

Defendant also cites two district court opinions from the eighties to support the proposition that pre-indictment delay, and by analogy delayed disclosures of evidence, can result in prejudice sufficient to warrant dismissal due to faded memories and lost evidence. Mot. at 7. First, pre-indictment delay does not have the same effect as delayed disclosure because a defendant who does not know he is facing criminal charges cannot conduct an investigation in support of his defense. Here, defendant was promptly indicted upon his extradition from Thailand and could have obtained the hotel records, which he knew existed, at any time thereafter as he prepared his defense.

Second, the facts of these cases are inapposite. In *Morrison*, the government waited six months to indict the defendant for a prison assault, and in the meantime destroyed the list of inmates who would have been present on the date of the alleged incident. 518 F. Supp. 917, 918 (S.D.N.Y. 1981). This "made it impossible for the defendant to locate certain potential witnesses on his behalf." *Id.* This logic cannot apply where defendant had the same access to the hotel

records as the government and where the government did not destroy evidence, but rather disclosed it seven months before trial.

In *Johnson*, the court found actual prejudice in a two-year pre-indictment delay because his alibi witnesses could no longer reliably testify to his whereabouts on the day in question, and corroborating documents had been stolen during the delay. *United States v. Johnson*, No. 85-4-RE (D. Or. Feb. 25, 1985). Crucially, though, the court *declined* to find that the destruction of certain "communication tapes" and the unavailability of particular witnesses had prejudiced the defendant, holding that the "usefulness" of such evidence was "only speculative." *Id.* (citing *United States v. Mays*, 549 F.2d 670, 677 (9th Cir. 1977). Defendant is not asserting an alibi defense that would benefit from the precise and recent memories of specific, identifiable individuals. If he were, hotel records that were already three years old when the government obtained them would be of no use to him. Instead, he asserts that some potential witness or witnesses listed in the hotel records may now be harder to find or that their memories may have faded. As in *Johnson*, the usefulness of such witnesses to the defense is only speculative. Defendant has not established prejudice even under the standard he suggests the Court import from pre-indictment delay jurisprudence.

To the extent that the hotel records demonstrate that the government's investigation did not identify the intended john, that information was disclosed shortly after indictment, and the records themselves were provided with plenty of time for defendant to make use of them at trial. To the extent the records identify potential witnesses to events that took place in 2021, those records have the same value in 2026 as they did in 2024. Even if the records were both exculpatory and suppressed, their disclosure seven months before trial cured any potential *Brady* violation. *See United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (suppression of

exculpatory information "may be cured. . .by belated disclosure of evidence, so long as the disclosure occurs at a time when disclosure would be of value to the accused").

**II. Dismissal Is an Extreme and Unwarranted Remedy**

Dismissal is reserved for egregious, outcome-altering prosecutorial misconduct. The Ninth Circuit repeatedly emphasizes reluctance to dismiss indictments absent intentional misconduct causing substantial prejudice. None of those elements exist here.

Circuit courts generally afford district courts discretion to fashion appropriate remedies for sustained *Brady* violations. *Cloud*, 102 F.4th at 981. The "usual" remedy for a Brady violation is a new trial. *United States v. Bolton*, 908 F.3d 75, 90–91 (5th Cir. 2018). Seeking dismissal with prejudice in advance of trial, as defendant does here, is a step beyond that. And nothing in the motion establishes conduct that is "so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993).

If the Court finds that a discovery violation has occurred, the appropriate remedies in this situation are obvious: production of materials, opportunity for use of the materials at trial, or a continuance if needed. The materials were produced by the government six months ago. Defendant may introduce them at trial and use them to cross-examine witnesses. Defendant has been offered a continuance of the trial date since the materials were produced, and has declined. No other remedy is supported by the law or by the facts of this case.

**CONCLUSION**

For the reasons above, defendant cannot meet any of the three requirements for a *Brady* violation. The hotel records contain only a list of unpursued leads and are not exculpatory. They were not suppressed because defendant had the necessary information to discover the evidence

himself and could have easily done so. And defendant was not prejudiced by receiving the records seven months before trial. Dismissal is unwarranted and unsupported, as is a jury instruction or any other sanction. The motion should be denied.

Dated: October 16, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Mira Chernick*
MIRA CHERNICK
WILLIAM M. McLAREN
Assistant United States Attorneys